IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALEB TAYLOR #449592, | ) |
| Plaintiff, | ) |
| | ) No. 3:24-cv-00412 |
| v. | ) |
| | ) Judge Trauger |
| BRIAN GALLOWAY, *et al.*, | ) Magistrate Judge Newbern |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Caleb Taylor, an inmate of the Middle Tennessee Mental Health Institute in Nashville, Tennessee, filed a pro se complaint against probation officers Brian Galloway, Kristen Smith, and Officer f/n/u Silvers, alleging violations of Plaintiff's civil rights. (Doc. No. 1).

### I. FILING FEE

Plaintiff filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2). By Order entered on April 30, 2024, the court notified Plaintiff that his IFP Application was deficient and instructed Plaintiff what steps he needed to take to remedy the deficiencies. (Doc. No. 7). Plaintiff has now complied with the court's instructions and submitted an Amended IFP Application (Doc. No. 8).

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation, it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his Amended IFP Application (Doc. No. 8) is **GRANTED**. The original IFP Application (Doc. No. 2) is **DENIED AS MOOT**.

1

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the Middle Tennessee Mental Health Institute to ensure that the

custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTIONS

After filing his complaint, Plaintiff filed a "Motion for Supenia" (Doc. No. 6) and a "Motion to add Exzibatation re Complaint" (Doc. No. 10).

While the first motion contains a signed Certificate of Service, the motion itself is unsigned. For that reason alone, the motion cannot be considered. However, even if Plaintiff had signed the motion, the court would not grant it. In the motion, Plaintiff explains that he signed the Consent of the Parties to the Magistrate Judge, but Defendants have refused to sign it and told him to "supenia them to Court." (Doc. No. 6 at PageID# 55). Plaintiff cannot, by way of a subpoena, force Defendants to consent to the assignment of this case to a Magistrate Judge. The motion (Doc. No. 6) is **DENIED**.

Plaintiff's second motion appears to be a request to add an exhibit to his complaint. (Doc. No. 10). Plaintiff states that he "would like to add the following Bill of Right Admanments [sic] as Exibitation [sic] A." The proposed exhibit consists of a list of the amendments to the United States Constitution. Plaintiff's motion is **GRANTED**, and the list will be considered as an attachment.

# III. SCREENING OF THE COMPLAINT

## A. PLRA SCREENING STANDARD

The complaint as amended[1] is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

---

[1] On April 23, 2024, Plaintiff filed a "Fourth Amended Complaint." (Doc. No. 5). However, Plaintiff only had filed one previous complaint. In any event, the later-filed complaint is very similar to the original complaint. The same Defendants are named, and the same allegations are raised. Due to Plaintiff's pro se status, the court has considered both complaints in conducting the required PLRA screening.

B. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. FACTS ALLEGED IN THE COMPLAINT

The complaint alleges that Plaintiff, his father, and Kelley Maynard previously shared a residence located at 1000 Wynnwood Drive, Castalian Springs, Tennessee. During that time Plaintiff was on probation. On August 4, 2023, probation officers Smith, Silvers, and Galloway conducted a search of that residence without a warrant. No drugs were found during the search of the premises. The officers told Plaintiff that he had to leave the house "and not to return to the residence." (Doc. No. 2 at PageID# 14).

Plaintiff told the officers that he had nowhere else to go. He pleaded with the officers to let him stay. Officer Smith "stated that she did not care if [Plaintiff] was homeless." (*Id.*) Plaintiff left, attempted suicide, and was hospitalized for eight days at Sumner Regional Hospital before being transferred to his current location, the Middle Tennessee Mental Health Institute.

D. ANALYSIS

Plaintiff brings claims against Defendants in their individual and official capacities. (Doc. No. 1 at PageID# 2-3). An official capacity suit is, in all respects other than the name, to be treated as a suit against the entity. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009). The complaint alleges that Defendants are employees of the "Department of Probation" in

5

Gallatin, Tennessee. (Doc. No. 1 at PageID# 2-3). A suit against an employee of Gallatin Probation and Parole Office is a suit against Gallatin, Tennessee. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). To state a claim against the City of Gallatin, the plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [the city of Gallatin] 'was the moving force behind the deprivation of [his] rights." *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against the City of Gallatin under Section 1983. The complaint does not identify or describe any of the city's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put the city on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp.2d 747, 751 (M.D. Tenn. 2010); *Johnson v. Metro. Gov't of Nashville*, No. 3:10-cv-0589, 2010 WL 3619790, at **2-3 (M.D. Tenn. Sept. 13, 2010). Accordingly, the court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability against the city of Gallatin. Plaintiff's claims against all three Defendants in their official capacities therefore must be dismissed.

Turning now to Plaintiff's individual capacity claims, Plaintiff's Section 1983 claims assert that he was deprived his constitutional rights under the Fourth Amendment. Specifically,

Plaintiff asserts that Defendants violated Plaintiff's Fourth Amendment rights by entering Plaintiff's residence without a warrant.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A police officer's entry into a home without a warrant"—like Plaintiff alleges here—"is presumptively unconstitutional under the Fourth Amendment." *Barton v. Martin*, 949 F.3d 938, 948 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)).

Only limited circumstances permit an officer to enter a suspect's home without a warrant or consent. Those include: "(1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals," along with (4) "when they reasonably believe that a person within is in need of immediate aid." *Causey v. City of Bay City*, 442 F.3d 524, 529 (6th Cir. 2006) (quoting *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992) and *Mincey v. Arizona*, 437 U.S. 385, 392( 1978)). A warrantless entry must be "limited in scope and proportionate to the exigency excusing the warrant requirement." *United States v. Hill*, No. 22-5274, 2023 WL 152474, at *3 (6th Cir. Jan. 11, 2023) (quoting *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1513 (6th Cir. 1988).

Plaintiff has plausibly alleged that Defendants' warrantless entry into Plaintiff's residence violated his Fourth Amendment rights. Thus, Plaintiff's individual capacity claims against

Defendants Galloway, Smith, and Silvers survive the PLRA screening and shall proceed for further development.

## IV. CONCLUSION

The court has screened the complaint pursuant to the PLRA and finds that the complaint fails to state Section 1983 claims upon which relief can be granted Defendants in their official capacities (which are actually claims against the City of Gallatin). Therefore, those claims are **DISMISSED**.

The court finds that there is at least one colorable claim in the complaint. The complaint states Fourth Amendment claims under Section 1983 against Defendants Galloway, Smith, and Silvers in their individual capacities. Those claims therefore shall proceed.

Consequently, the Clerk is instructed to send Plaintiff a service packet (a blank summons and USM 285 form) for the remaining Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within 30 days of the date of entry of this Order. Upon return of the service packets, **PROCESS SHALL ISSUE** to Defendants Galloway, Smith, and Silvers.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor

8

Case 3:24-cv-00412    Document 11    Filed 01/16/25    Page 8 of 9 PageID #: 87

does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

9

Case 3:24-cv-00412    Document 11    Filed 01/16/25    Page 9 of 9 PageID #: 88